**UNITED STATES, Appellee,**

v.

**Private E2 Frederick GODFREY,
266–61–6004, United States
Army, Appellant.**

**ACMR 9200798.**

U.S. Army Court of Military Review.

4 Dec. 1992.

For Appellant: Major Robin L. Hall, JAGC, Captain Mark L. Toole, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC, Captain John P. Saunders, JAGC (on brief).

Before CREAN, GONZALES, and DELL'ORTO, Appellate Military Judges.

OPINION OF THE COURT

DELL'ORTO, Judge:

The appellant, pursuant to his pleas, was found guilty, by a military judge sitting as a general court-martial, of conspiracy to commit burglary and larceny, larceny, and burglary, in violation of Articles 81, 121, and 129, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, and 929 (1982) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for 27 months, forfeiture of all pay and allowances, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority reduced the confinement to 15 months, but otherwise approved the sentence.

Only one of the appellant's assertions of error merits discussion. He contends that the staff judge advocate erred when he raised new matter in the addendum to his post-trial recommendation and then failed to serve that addendum on the appellant's trial defense counsel. For the reasons set out below, we disagree.

The appellant was one of three soldiers found guilty of offenses stemming from a successfully executed plan to burglarize the barracks rooms of other soldiers during the night of 25 December 1991. The appellant acted as a lookout as the other two soldiers entered and stole various items from several rooms. In her submission of matters to the convening authority pursuant to Rules for Courts–Martial 1105 and 1106 [1], dated 2 June 1992, the trial defense counsel requested clemency for the appellant. The counsel synopsized the facts of the offenses, named each of the coconspirators, compared their roles, and pointed out that the appellant's role in the plan was "obviously more limited" than those of his coconspirators. In requesting a reduction in confinement below the limitation established by the pretrial agreement, the trial defense counsel informed the convening authority that one coconspirator's "sentence of confinement was only six (6) months." She did not mention the sentence of the third coconspirator.

In his addendum to the post-trial recommendation, the staff judge advocate advised the convening authority that the trial defense counsel had failed to state that the third coconspirator "received a three year sentence." [2] There is no evidence in the record or allied papers that this addendum was served on the trial defense counsel. Indeed, the convening authority's action is dated 10 June 1992, the same date as the addendum.

### I. The Service Requirement

A starting point for our determination of this issue is R.C.M. 1106(f)(1), which embodies the requirement first mandated in *United States v. Goode*, 1 M.J. 3, 6 (C.M.A. 1975), that a copy of the post-trial review [3] "be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment." The Court of Military Appeals established this service requirement in response to controversy concerning the content and accuracy of information contained in post-trial reviews. *Id.* As the court later held, the *Goode* service requirement "was predicated on a desire to eliminate delays encountered in claims of error in post-trial reviews and the exhaustion of appellate resources when such errors could easily and expeditiously be resolved prior to the convening and supervisory authorities' actions." *United States v. Hill*, 3 M.J. 295, 296 (C.M.A.1977). In *United States v. Narine*, 14 M.J. 55 (C.M.A.1982), the court extended the service requirement to include any addendum of the post-trial review that contains new matter. This extension of the service requirement to addenda of the post-trial recommendation is codified in R.C.M. 1106(f)(7). New matter includes "matter from outside the record of trial." *United States v. Norment*, 34 M.J. 224 (C.M.A. 1992) (quoting R.C.M. 1106(f)(7) discussion). " 'New matter' does not ordinarily include any discussion by the staff judge advocate or legal officer of the correctness of the

---

1. Manual for Courts–Martial, United States, 1984, Rules for Courts–Martial 1105 and 1106 [hereinafter R.C.M.].

2. We note that both the staff judge advocate's recommendation and the defense counsel's submissions under R.C.M. 1105 and 1106 contain factual errors. For instance, the staff judge advocate's recommendation indicates that the appellant had two prior episodes of nonjudicial punishment and no convictions, whereas at trial, the trial counsel introduced exhibits evidencing that the appellant had a previous summary court-martial conviction and one episode of punishment under Article 15, UCMJ. In the defense counsel's submissions, she misstates the limitation on confinement under the terms of the pretrial agreement as 18 months instead of the correct figure of 15 months. We caution both staff judge advocates and counsel that neither the soldier nor the convening authority is well served by such obvious errors.

3. Prior to prescription of Manual for Courts–Martial, United States, 1984, the staff judge advocate's post-trial recommendation was termed post-trial review.

initial defense comments on the recommendation." R.C.M. 1106(f)(7) discussion.

■ The purpose of the post-trial recommendation "is to assist the convening authority to decide what action to take on the sentence in the exercise of command prerogative." R.C.M. 1106(d)(1). Accordingly, we believe it to be imperative that the convening authority be provided accurate and complete information in the post-trial recommendation, addenda thereto, and in any defense response to either the recommendation or an addendum. The *Goode* and *Narine* service requirements, as now reflected in R.C.M. 1106(f)(1) and (7), work as a system of checks and balances to ensure that the convening authority receives only the most accurate and complete information prior to fulfilling his statutory duties in acting on an accused's sentence under Article 60(c), UCMJ.[4]

■ In the case *sub judice*, government appellate counsel argue that the staff judge advocate's addendum pointing out the third coconspirator's sentence did not raise new matter. We agree. The appellant's trial defense counsel provided the convening authority with considerable information about not only the appellant, but also his coconspirators. Conspicuously absent from her post-trial submission was the third coconspirator's sentence. This omission, in the context of the counsel's request of the convening authority, amounted to an error which the staff judge advocate understandably believed necessary to correct.[5] In completing the record with regard to the third coconspirator's sentence, we find that the staff judge advocate's comments constituted "discussion of the correctness of the initial defense comments on the recommendation," R.C.M. 1106(f)(7) discussion. Accordingly, we hold that the staff judge advocate was not required to serve the addendum on the defense counsel for comment.

## II. Testing for Prejudice

If the information in the addendum had been new matter, the staff judge advocate would have erred in failing to serve the addendum on the trial defense counsel. R.C.M. 1106(f)(7); *Norment*, 34 M.J. at 227. If there was error, the next question for resolution would be whether that failure can be tested for prejudice. Government appellate counsel argue that such an error should be tested for prejudice. Appellate defense counsel counter by arguing that failure to serve trial defense counsel with an addendum containing new matter should be considered as a general prejudice. The failure to serve this addendum foreclosed any possibility of distinguishing the third

---

4. We do not imply that this goal of providing the convening authority with complete and accurate information should result in a paper battle between a staff judge advocate and an accused's counsel. As the Air Force Court of Military Review has previously stated, "Compliance with the *Goode* rule was not intended to generate an endless succession of defense challenges and staff judge advocate responses thereto.... Such a requirement could place an intolerable burden upon convening authorities to afford an accused the speedy post-trial disposition of his case." *United States v. Meyer*, 1 M.J. 755, 756 (A.F.C.M.R.1975) (*quoted in Narine*, 14 M.J. at 57).

5. We do not condone gamesmanship in providing information to the convening authority preparatory to his action on sentence. *Cf. Norment*, 34 M.J. at 227 (Crawford, J. concurring) (criticizing "gamesmanship" in raising, for the first time post-trial, issues that should have been raised at trial). If the appellant's counsel was requesting the convening authority to compare her client's sentence to those of his conconspirators, she should have provided him with *all* the sentences. The convening authority had a right to know the sentences of all co-accuseds to the crimes, not only the least severe, but also the most severe. *See United States v. Snelling*, 14 M.J. 267, 269 (C.M.A.1982). We judicially notice that one coconspirator, Specialist Perry, received a sentence of a bad-conduct discharge, confinement for 6 months, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the adjudged sentence on 2 July 1992. This Court affirmed the findings and sentence. *United States v. Perry*, ACMR 9200958 (A.C.M.R. 11 Sep. 1992) (unpub.). The third coconspirator, Specialist Porter, received a sentence of a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority reduced the period of confinement to 18 months, but otherwise approved the adjudged sentence on 10 June 1992, the same date he took action on the appellant's case. This Court has not yet reviewed Private Porter's case.

coconspirator's case from the appellant's. Appellate defense counsel further argue, "Had there been some distinguishing factor, which is certainly a distinct possibility, the defense surely would have forcefully pointed it out." Finally, appellate defense counsel argue that the error hindered the appellant's best chance for sentence relief, citing *United States v. Bono*, 26 M.J. 240, 243 n. 3 (C.M.A.1988). We agree with the government and disagree with the appellant.

The Court of Military Appeals arguably rejected a test for prejudice in those situations where the government errs in the post-trial review process when it held:

> It dilutes the curative effect of *Goode* to ignore the lack of input from the defense counsel and to examine the new material for possible prejudice at the appellate level neither substitutes for the input of the defense counsel nor avoids the appellate caseload that *Goode* was designed to reduce.

*Narine*, 14 M.J. at 57.

We note, however, that *Narine* was decided prior to the Military Justice Act of 1983 and the ensuing prescription of the Manual for Courts–Martial, United States, 1984, and the Rules for Courts–Martial contained therein. Significantly, in addressing the 1983 Act's proposed changes to the convening authority's duties with respect to taking action on a court-martial pursuant to Article 60, UCMJ, the report of the Senate Committee on the Armed Services stated, "If there is an objection to an error that is deemed prejudicial under Article 59 [6] during appellate review, it is the Committee's intent that appropriate corrective action be taken by appellate authorities without returning the case for further action by the convening authority." S.Rep. No. 53, 98th Cong., 1st Sess. 21 (1983).

We recognize that some decisions of our superior appellate court since enactment of the Military Justice Act of 1983 have clouded this issue. *See United States v. Anderson*, 25 M.J. 342, 344 (C.M.A.1987)

(In responding to the accused's clemency petition relating to his offense of, *inter alia*, involuntary manslaughter, "[t]he reference by the staff judge advocate to the large civil claim against the United States was not so trivial that it can be disregarded as a *nonprejudicial* violation of R.C.M. 1106(f)(7)." (emphasis added)). In *United States v. Heirs*, 29 M.J. 68 (C.M.A.1989), the staff judge advocate's addendum to his recommendation responded to the appellant's post-trial attack on the sufficiency of the evidence on the offense of making bad checks with the intent to defraud. The addendum, which was not served on the trial defense counsel, referred to the appellant's providence inquiry testimony during his attempt to plead guilty to that offense—a plea the military judge rejected as improvident. The court held that it was error to rely on this inadmissible testimony and directed that a new recommendation be prepared, without any discussion of prejudice. Significantly, though, *Heirs* contained the additional error of a lack of evidence that the convening authority had considered the appellant's clemency submission, an error requiring a new action under *United States v. Craig*, 28 M.J. 321 (C.M.A.1989). Most recently, in responding to a government argument advocating a test for prejudice, the Court of Military Appeals stated:

> The Government points out that, in *United States v. Anderson*, 25 M.J. 342, 344 (C.M.A.1987), this Court implied that failure to serve an addendum containing new matter might be nonprejudicial, notwithstanding the majority's clear holding to the contrary in *Narine*. Regardless, the Government's contention that the defense could not have benefited from an opportunity to respond to the addendum here asks us to hide our judicial heads in the sand.

*Norment*, 34 M.J. at 227.

Neither this Court nor our sister service courts of review have been consistent in the treatment of this issue. Some deci-

---

**6.** Article 59(a), UCMJ, states, "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error of law materially prejudices the substantial rights of the accused."

sions have clearly tested for prejudice. In *United States v. Ricks*, 21 M.J. 569 (A.C.M.R.1985), *aff'd*, 25 M.J. 167 (C.M.A. 1987) (summary disposition), the staff judge advocate's recommendation made no comment regarding the accused's sanity. In the accused's clemency petition, the trial defense counsel raised a question concerning the accused's "mental status." *Id.* at 570. In an addendum, which was not served on the trial defense counsel, the staff judge advocate informed the convening authority that a sanity board "had concluded that the accused has the capacity to understand and cooperate intelligently in the post-trial proceedings." *Id.* After holding that the addendum's reference to the sanity board constituted new matter that should have been served on the defense counsel, this Court declined to return the case for a new review and action, and instead reassessed and affirmed the sentence. *Accord United States v. Ortiz*, 33 M.J. 549, 555 (A.C.M.R.1991), *rev'd on other grounds*, 35 M.J. 391 (C.M.A.1992); *United States v. Haynes*, 28 M.J. 881 (A.F.C.M.R.), *pet. denied*, 29 M.J. 314 (C.M.A.1989).

In other instances, courts of military review have returned the case for a new review and action. In *United States v. Holmes*, 33 M.J. 750 (A.C.M.R.1991), this Court addressed an *Heirs* issue in which the staff judge advocate's addendum referred to inadmissible testimony at trial and was not served on the trial defense counsel. This Court set aside the action of the convening authority and returned the case for a new review and action. There was no discussion of prejudice. In *United States v. Thompson*, 25 M.J. 662 (A.F.C.M.R.1987), the court found that the unserved addendum's change in the recommended location of confinement and rebuttal of the appellant's claims about the timing of his efforts to seek help with his drug problem constituted new matter. The court stated, "Although we have grave doubts as to whether the appellant has suffered any prejudice as a result of the omission in this case, we feel constrained by law to take appropriate remedial ac-

tion," and then quoted language from *Narine*. *Thompson*, 25 M.J. at 666.

■ We must reconcile these conflicting views to arrive at our determination of whether a post-trial error of this nature may be tested for prejudice. In so doing we seek a methodology that will guarantee some measure of predictability in the resolution of this issue in cases that will almost certainly follow. We believe that the Navy–Marine Court of Military Review has provided this methodology in *United States v. Skaar*, 20 M.J. 836, 838–40 (N.M.C.M.R.1985). In *Skaar*, the court found error in the convening authority's premature action under R.C.M. 1107 prior to receipt of any submission from the appellant pursuant to R.C.M. 1105. While not addressing the issue of post-trial recommendation addenda, its analysis is nevertheless instructive. The court cited Article 59(a), UCMJ, and *United States v. Remai*, 19 M.J. 229 (C.M.A.1985), for the proposition that "The Court of Military Appeals has all but abandoned the concept of general prejudice, except where a fundamental constitutional right is denied." *Skaar*, 20 M.J. at 838. It tested the convening authority's error for prejudice just as errors under *Goode* and R.C.M. 1106 are "assessed for prejudicial impact." *Id.* Importantly, *Skaar* extrapolated an analytical scheme from *United States v. Weeks*, 20 M.J. 22 (C.M.A.1985), for the assessment of prejudice in cases not involving a fundamental right. *Id.* at 838–39. That scheme is:

First: The character of the rule violated. Is it a rule of substantive law, procedure or evidence?

Second: The purpose of the specific rule and its underlying policy.

Third: The degree of risk, in terms of conviction and sentence, to the appellant at the time the rule is violated. The point of risk is greatest during trial; less in the pretrial stage, where relief can be sought from the military judge and the actual trial has not begun; and even less in the post-trial stage where risk, in terms of conviction and potential sentence, has been resolved and there exists

a record and extensive appellate mechanisms for determining facts and resolving error.

Fourth: The character of the potential actual harm to the accused. For example, whether the risk of conviction was enhanced, the sentence was more severe, there was a loss of opportunity to exercise a right, etc. Potential harm must be actual harm, not remote or ingenious, fanciful or imagined harm.

Fifth: The materiality of the harm to the purpose of the violated rule and its underlying policy.

Sixth: Considering the circumstances, the degree of risk of material actual harm to the accused resulting from the violation of the rule.

*Id.* at 839.

 Applying the facts of this case to that scheme, we arrive at the following conclusions. First, the R.C.M. 1106 right involved is a procedural right which is not a fundamental constitutional right. Second, as indicated *supra,* its purpose is to provide the convening authority accurate information upon which to exercise his command prerogative under R.C.M. 1107 and Article 60, UCMJ. Third, there is no risk as to the appellant's conviction and sentence at trial as those determinations had been made prior to the error. Fourth, there is only minimal risk that the convening authority had taken less favorable action in the absence of the possibility that there might be some distinguishing factor that might have set the appellant apart from the second coconspirator. Fifth, the appellant has offered nothing to show what matters he would have presented in a response to the addendum to either refute the accuracy of the addendum's content or to rebut it with additional matters.[7] Accordingly, sixth, there has been no showing of material actual harm.

We hold that the addendum to the staff judge advocate's recommendation did not contain new matter and, therefore, did not have to be served on the appellant's trial defense counsel. Even if that addendum did contain new matter, any error in failing to serve it on the trial defense counsel did not prejudice the appellant.

We have carefully considered the other assignments of error raised by the appellant, including that raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge GONZALES concur.

---

7. As we have indicated in footnote 5, *supra,* the convening authority took action pursuant to R.C.M. 1107 on both the appellant's and then Specialist Porter's sentences on 10 June 1992. Even without the objectionable addendum, the convening authority would have known about all coconspirators' adjudged sentences on the day he acted on the appellant's.